The STATE OF MONTANA, Plaintiff and Respondent, v.
CHARLES EDWARD CORLISS, a/k/a Charles Edward
Hayes, Defendant and Appellant.

No. 11099.
Submitted May 9, 1967. Decided July 25, 1967.
Rehearing denied August 14, 1967.
Certiorari denied U. S. Supreme Court March 4, 1968.
430 P.2d 632.

Lloyd J. Skedd, Helena, for appellant.

Forrest H. Anderson, Atty. Gen., Thomas J. Hanrahan, County Atty., Donald A. Garrity, Asst. Atty. Gen., Helena, for respondent.

PER CURIAM.

This is an appeal by defendant in a criminal action from a judgment entered on a jury verdict of guilty of the crimes

of murder in the first degree and kidnapping with the intent to secretly confine. The jury left the punishment to be fixed by the district court. The district court imposed a sentence of life imprisonment for the crime of murder in the first degree and a sentence of ten years for the crime of kidnapping with the intent to secretly confine. Both sentences are to run consecutively.

Defendant-appellant is Charles Edward Corliss, also known as Charles Edward Hayes, and will be referred to as defendant.

Defendant's brief sets forth thirty-two specifications of error. From these specifications of error, eleven issues are presented to this court for review.

Before considering the issues presented for review which are relevant, we will make a brief statement of the facts in this case. Additional facts that are important for a complete understanding of the various issues discussed will be added during the course of the opinion.

On September 14, 1965, Donald Hammer, the owner and operator of a post yard in Lincoln, Montana, was kidnapped, robbed, and murdered. The exact details concerning Mr. Hammer's tragic death will never be known for this senseless murder was perpetrated by two individuals both of whom have sought to place the blame on the other. But from either man's story the following events can be gleaned.

David Clinton Walters, a youth of 18 years, and defendant, who was 25 years of age, drove in a borrowed Oldsmobile car, to the office of Donald Hammer at his post yard in Lincoln. They asked him about the post sizes that he bought and the prices he would pay for these posts. Mr. Hammer invited them into his office to give them the desired information. Once inside, they drew a gun on Mr. Hammer and asked him to write out a check. When he could not do this since his checkbook was not in the office, they ordered him out of his office and into the back seat of the car. They then drove him toward Great Falls and robbed him of the money in his wallet. They

stopped at a point about 15 miles east of Lincoln. One or both of them marched Mr. Hammer into the trees alongside the highway, and Donald Hammer was then shot in the back of the head and left to die.

Defendant's first issue presented for review is: "Whether or not a person may be held to answer for a capital crime without presentment or indictment by a grand jury?"

On September 28, 1965, County Attorney Thomas J. Hanrahan of Lewis and Clark County filed a motion for leave to file information direct in the district court against defendant and David Walters, leave to file was granted, and the imformation charging defendant and Walters with murder and with kidnapping with intent to secretly confine was filed.

Defendant moved to quash this information, but the motion was denied. Defendant was actually tried under an amended information filed January 19, 1966, and also filed direct in the district court. The amended information charged only defendant with the crimes as Walters had previously pled guilty to both crimes. However, in his brief, defendant appears to take issue generally with the practice of obtaining leave to file the information direct in the district court.

It is rather surprising that there would be an objection to the information procedure of charging a crime at this late date. Charges made by informations filed after a hearing before a magistrate, or by leave of the district court, have long been sanctioned by statute and by the Montana Constitution, Art. III, § 8; Sections 94-4904, 94-6201, R.C.M.1947. State ex rel. Juhl v. District Court, 107 Mont. 309, 84 P.2d 979, 120 A.L.R. 353, analyzed several decisions of this court approving the information procedure and set forth rules which guide the discretion of the court to either grant or deny leave to file an information.

The Supreme Court of the United States first held that a state could proceed against criminal defendants by information rather than indictment in Hurtado v. People of State of Cali-

fornia, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232, decided March 3, 1884, and in Beck v. Washington, 369 U.S. 541, 545, 82 S. Ct. 955, 957, 8 L.Ed.2d 98, decided May 14, 1962, commented on the Hurtado case in this manner:

"Ever since Hurtado v. [People of State of] California, 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232 (1884), this Court has consistently held that there is no federal constitutional impediment to dispensing entirely with the grand jury in state prosecutions."

Defendant's second issue is: "Does 'due process of law' require the State to furnish a bill of particulars where the crime charged is not detailed enough to determine the statute allegedly violated?"

Defendant here is asking this court to overrule State v. Bosch, 125 Mont. 566, 242 P.2d 477, and hold the district court in error for failure to grant defendant's request for a bill of particulars. State v. Bosch, supra, held that the existence of a code of criminal procedure is complete and since it contained no provision for a bill of particulars the trial court had no authority to require that one be furnished. Defendant's reason for asking for reversal of the Bosch case is that "due process" requires that he be charged in a manner that will enable him to prepare a defense. The reason advanced cannot be accepted because it relates to the sufficiency of the information and does not in any way raise the issues discussed in the Bosch case. We shall discuss hereafter the sufficiency and clarity of the charge.

The next issue to be considered is defendant's third issue: "Whether or not a statement by the accused, in the absence of counsel, was made at a time the investigation had focused on him such as to render it inadmissible."

The facts leading up to defendant's statements are these: Mr. Hammer was reported missing to the deputy sheriff in Lincoln on the evening of September 14, 1965. The deputy sheriff in turn reported Mr. Hammer's absence to Sheriff

Middlemas in Helena on the morning of September 16, 1965. Sheriff Middlemas during the course of his investigation found out from an employee of the missing Hammer that on September 14th he saw Hammer come to the post yard and go into his office; shortly afterwards he saw an Oldsmobile car leave the yard. While the employee was not absolutely certain of the color of the automobile he thought it was either light gray or light tan. The Sheriff was in the radio room listening to the law enforcement officers' radio network from about eleven a.m. on that morning and around one o'clock he overheard a conversation from Choteau, the Sheriff there stating that a young fellow in a gray Oldsmobile had been arrested at Choteau the morning before September 15th, and the young man and automobile had been returned to Conrad. Middlemas immediately called the sheriff at Conrad and asked him to casually question this young man and see if he would place himself in the vicinity of Lincoln on Monday, September 14th, or Tuesday, September 15. The Conrad sheriff did so and called Middlemas back and said that the young man placed himself in Lincoln on Monday. Middlemas, pursuing this slim lead, left for Conrad that same afternoon, and as he explained at the trial, he was primarily looking for a missing man, Hammer, and he did not know whether he was dead or alive but hoped he was alive. On that evening at Conrad, Walters told Sheriff Middlemas his version of the crimes, implicating the defendant, gave a written statement and agreed to try to point out the spot where Mr. Hammer had been led into the forest, and according to his version had been tied to a tree. Mr. Hammer's body was discovered on September 18, 1965, when Walters was taken to the scene a second time. The search had been hampered by new fallen snow in the rugged terrain of the Continental Divide in the Stemple Pass area.

Walter's version of the crimes was released to the press, and the press was kept informed of the search activities. Defendant was aware of these activities from his jail cell as he had

access to a radio and newspapers. Deputy Sheriff Laurence L. Lytle first interviewed defendant on September 21, 1965, and fully advised him of his rights. In this interview defendant kept telling Deputy Sheriff Lytle that no one wanted to listen to his side of the events.

On September 25, 1965, defendant gave a statement to County Attorney Hanrahan and Sheriff Middlemas in which he set forth his version of the crimes. The statement was transcribed by W. J. May, the court reporter in Conrad. Defendant was warned of his various constitutional rights once again as he had been each time any law enforcement officer talked with him in connection with Donald Hammer's disappearance and subsequently discovered murder. Immediately following this statement, defendant and Walters at the request of each of them, gave a joint statement in each other's presence.

Before taking the written statement from defendant, County Attorney Hanrahan gave the following warning: "Chuck, this is Dave Middlemas, the Sheriff of Lewis and Clark County, and I am Tom Hanrahan, the County Attorney of Lewis and Clark County, and this is Mr. May, an official court reporter. I have previously advised you, but I want to advise you again that you don't have to make any statement to us, that any statement you may make can be used against you, that you can have the services of an attorney at any time you want. I am not going to make you any promises to get you to discuss this matter, and I am certainly not going to threaten you. You understand that, do you? A. Yes. [By defendant.]"

Defendant's brief does not suggest that the statements were not voluntary. Defendant's brief does not contend that defendant was not properly advised of his constitutional rights. Rather, defendant's brief states: "Although there is authority to the contrary, once an investigation of a crime focuses on an accused, a confession given by him in the absence of counsel is

inadmissible." The brief then refers this court to four cases, without a discussion of the cases.

Briefly these cases dealt with the following issues: failure to honor defendant's request that he be allowed counsel before being interviewed by police authorities, United States ex rel. Walker v. Fogliani, 343 F.2d 43 (U.S.C.A. 9th Cir.); failure to follow the Federal Rules of Criminal Procedure before securing the confession and misuse of the inadmissible confession during cross-examination, Johnson v. United States, 120 U.S. App.D.C. 69, 344 F.2d 163 (U.S.C.A Dist of Col.); failure to give clear warnings as to defendant's constitutional rights to remain silent and to have counsel before securing confession, People v. Dorado, 62 Cal.2d 338, 42 Cal.Rptr. 169, 398 P.2d 361, cert. den. 381 U.S. 937, 85 S.Ct. 1765, 14 L.Ed.2d 702, and People v. Bilderbach, 62 Cal.2d 757, 44 Cal.Rptr. 313, 401 P.2d 921.

We fail to see the applicability of any of these cases to the facts of the instant case.

 In this case, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, controls, as defendant's trial was after the Escobedo case and before Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; In re Petition of Jones, 148 Mont. 10, 416 P.2d 540.

 The issue of the sufficiency of the information in charging the crime of kidnapping is directly raised by defendant's fourth contention being that the court erred in not sustaining his demurrer to the information. The claim that the information is uncertain arises from defendant's conclusion that the charge of "kidnapping with intent to secretly confine" might be made equally well under section 94-2601 or section 94-2602, R.C.M.1947. The former carries a maximum penalty of death while the latter carries a maximum of ten years imprisonment.

Even considering that sections 94-2601 and 94-2602 might overlap it does not appear that the language of the information could be applied equally to both. Section 94-2601 has as one

element to "attempt or cause such child or person or persons to be secretly confined * * *." This element is very different from the language of section 94-2602 which provides: *"With intent to cause such person* to be sent or taken out of this state, or *to be secretly confined* within the same against his will * * *." (Emphasis supplied.)

The language of the information clearly charges a violation of section 94-2602 and it was so held in State v. Randall, 137 Mont. 534, 353 P.2d 1054, 100 A.L.R.2d 171. Count 2 is direct and certain, stated in ordinary language so that a person of common understanding can know what is intended, and enables a court to properly impose sentence after conviction; all of which is required by statute. Sections 94-6403, subd. 2, 94-6405, 94-6412, subd. 7, R.C.M.1947. Thus defendant's arguments as to his second issue and this issue that he needed more specifics in order to prepare a defense are not well-taken.

■ We move to a consideration of defendant's fifth issue: "Whether or not the accused was entitled to a change of venue."

The nature of this crime was such that it gained wide-spread newspaper coverage. Walters talked willingly, though not truthfully, from the very beginning. The press covered the events as they developed. Initial reports of the crimes set forth Walters' version of the crimes blaming defendant for the murder. Despite his initial story and his continuing denial that he shot Donald Hammer, Walters chose not to stand trial; and on October 25, 1965, Walters pled guilty to the charges against him. On November 3, 1965, after a hearing in mitigation had been held a few days previous, District Judge Lester H. Loble sentenced Walters. Judge Loble expressed doubt in Walters' version concerning how the crimes had been committed. Judge Loble's comments were also reported by the press. At the hearing on the motion for change of place of trial, held on November 5, 1965, Sheriff Middlemas revealed the fact that a lie detector test had been administered to both Walters and defen-

dant. This test, by stipulation of defendant's counsel and Walters' counsel, was administered on October 14, 1965. Sheriff Middlemas stated that this lie detector test "showed conclusively that Walters shot Mr. Hammer." This testimony also received press coverage.

"It is well-settled in Montana that mere publication of a news story concerning a crime is not a deprivation of a constitutional right or a ground for a change of venue. * * *

"This court has said in a number of cases concerning news articles and broadcasts that the publication in itself is not sufficient but that the affidavits must show passion and prejudice flowing from such publication; * * *

"The cases in Montana have established that before a district judge can exercise his discretion in granting a change of venue there must be more than (1) affiant's unsupported opinion, (2) the fact that the account of a crime has been published, that said published accounts of the crime are not prejudicial unless they are passionate enough to excite undue prejudice, to the extent of rendering it impossible for the accused to have a jury free from prejudice." State ex rel. Hanrahan v. Dist Ct., 145 Mont. 501, 507, 508, 401 P.2d 770, 774.

Defendant's contention that the pre-trial publicity of the case prevented him from selecting a jury from Lewis and Clark County that had not already formed an opinion as to his guilt is not supported by the facts.

The crimes were committed against a respected citizen of Lincoln, Montana, a community containing less than two per cent of Lewis and Clark County's population and a community which is located in a remote portion of the county. All but two of the witnesses who testified at the hearing on the motion for change of place of trial expressed the opinion that defendant could obtain a fair trial in Lewis and Clark County. Defendant selected a jury without using all his peremptory challenges, and only one of the 46 veniremen examined admitted to having formed an opinion regarding defendant's guilt or innocence.

Defendant's sixth issue presented for review is: "Whether or not the accused was entitled to exclude the testimony of a witness during trial when he had refused to answer questions on deposition prior to trial."

As previously noted, Walters pled guilty to the charges, received his sentences, and was sent to the state prison, all before the time arrived for defendant's trial. Defendant desired to take walters' deposition, and walters was brought under court order to the courtroom of Judge Loble for the purpose of giving a deposition. However, upon the advice of his counsel, Walters refused to answer any questions that pertained to the crimes which he had pled guilty to upon the ground that it might tend to incriminate him. Judge Loble refused to compel him to answer any questions.

Walters was subpoenaed by the State as one of its witnesses against defendant at the trial. On the day the trial was to begin, counsel for Walters petitioned the district court on behalf of his client for a protective order for his client should Walters elect to testify in the trial of defendant. The petition requested in part that "if your petitioner, David Clinton Walters, elects to testify in the trial * * * beginning on Monday, January 10, 1966 * * * that his testimony be not used against him in any criminal action or proceeding as provided for in section 94-8804, R.C.M.1947, and in other pertinent statutes and constitutional provisions pertaining thereto * * *."

Section 94-8804 provides: "When two or more persons are jointly, or otherwise, concerned in the commission of an offense, any one of such persons may testify for or against the other in relation to the offense committed, but the testimony of such witness must not be used against him in any criminal action or proceeding."

The district court granted the relief sought in the petition and entered an order accordingly.

Refusing to answer questions at the taking of the deposition and seeking immunity under section 94-8804 if he elected to

testify at the trial were actions of Walters upon the advice of his counsel. The state in no way influenced Walters upon the advice of his counsel. The state had no control of Walters in this respect. The state called Walters as a witness at the trial, and Walters, in light of the immunity that had been granted to him by the pre-trial order he sought, decided to testify.

Defendant was given a complete opportunity to cross-examine him and to confront him. In cross-examining Walters, defendant's counsel had Walters read his statement of September 16th into the record. This procedure pointed out the main discrepancies in Walters' testimony. It should be noted that the county attorney brought out on direct examination the fact that Walters had lied on several occasions prior to the trial.

It would be pure speculation upon our part as to what course the county attorney would have taken had Walters refused to testify at the trial. Such did not happen.

■ Defendant's brief makes abstract references to various constitutional provisions, statutory sections, and case authority, but the brief does not point out any authority for his contention that Walters' action in refusing to answer questions at the deposition rendered his testimony inadmissible at the trial. As a matter of observation, it might well have been advantageous as a tactital weapon for defense counsel to have used this issue as he did; only emphasizing that even if error occurred no prejudice resulted.

■ The seventh issue presented for review is: "Whether or not a challenge to the jury panel as a whole is proper where 300 jurors are called and 116 of them are discharged or excused from service and it is not possible from the record to determine the reason for the excuse or 'who' excused them from service."

Defendant objected to the jury panel as a whole, but he offered no evidence to substantiate his objection. District Judge Victor H. Fall was sworn as a witness and testified that: "It is my memory that I excused no one from this panel for any

reason other than that in my opinion they were disqualified by reason of inability to serve, or had a valid excuse under the statute." Defendant offered no evidence to overcome the presumption of section 93-1301-7, subd. (15), R.C.M.1947, that establishes that "official duty has been regularly performed" which was established by the testimony of Judge Fall.

In addition, as previously noted, defendant was able to select a jury from the remaining members of the panel without even exhausting the peremptory challenges available to him. "The right to challenge is the right to reject, not to select, a juror; no person can acquire a vested right to have any particular member of a panel sit upon his case unless and until such member has been accepted and sworn. [State v. Huffman, 89 Mont. 194, 198, 296 P.789.]" State v. Moran, 142 Mont. 423, 447, 384 P.2d 777, 790.

The eighth issue is: "Whether or not an indigent accused is entitled to expenses for investigation to enable him to prepare for trial."

Defendant asked the trial court to provide him with at least three professional investigators to assist him in the the preparation of his defense. This request was denied and error is assigned on the theory that the investigators were necessary to render defendant's right to counsel effective. This contention is not well-taken because it appears that the defendant was provided adequate assistance. The state furnished psychiatric examinations to the defendant. Upon defendant's request the state furnished lie detector examinations. The state also granted defendant's request for a daily transcript furnished during the trial. This case is characterized by an unprecedented cooperation on the part of the county attorney who demonstrated a spirit of openness and complete disclosure. Defendant's brief and the record simply do not provide any convincing evidence of prejudice resulting from the court's refusal to underwrite the cost of investigators.

Defendant's ninth issue is: "Whether or not there was suf-

ficient competent evidence of the crimes charged to convict the accused."

Defendant's tenth issue is: "Whether or not the jury was properly instructed as to the law."

We think these two issues are properly considered together. The theory under which the state presented its case went about like this: Walters and defendant kidnapped and robbed Donald Hammer, and then either Walters or defendant or both shot and killed him. The state contended that since the murder was committed while a robbery was being committed that it was murder in the first degree. Finally, the state contended that it really made no difference as to whether Walters killed Donald Hammer or defendant killed him since both were guilty of murder in the first degree under the murder felony rule. (Section 94-2503, R.C.M.1947.)

At the trial the state's witnesses established that defendant and Walters had been in Lincoln before and after the time the kidnapping, robbery and murder had taken place; that Donald Hammer was seen talking to two men just prior to the time the car was seen leaving the post yard; that a car very much like the one which defendant Walters was driving when arrested was seen driving from Donald Hammer's post yard; that Donald Hammer was never seen alive after that car left the post yard; that defendant had purchased a .22 caliber single shot pistol on August 25, 1965; that the pistol was in the car when defendant and Walters were arrested; that the pistol had been fired; that the bullet which killed Donald Hammer was a .22 long rifle caliber bullet, manufactured by Western Winchester; that a box of 26 cartridges and 24 loose cartridges found in the car were the same type ammunition, that is .22 long rifle caliber bullets, manufactured by Western Winchester; that a pair of cotton gloves found in the car were like the ones used by Donald Hammer and his employees at the post yard.

The state presented the testimony of David Walters. His

testimony blamed defendant for the robbery, the kidnapping, and the murder. Walters did admit to handling the gun at times during the robbery and kidnapping, but he denied knowing what happened to Donald Hammer in the forest other than he heard a shot and was told by defendant that Donald Hammer was tied up.

The state moved for the introduction of the statement defendant had given to the authorities and for the introduction of the statement defendant and Walters had given to the authorities, both statements having been given on September 25, 1965, *and they were admitted without objection.* These statements were then read into the record.

Defendant's own statements make it impossible to find that he was not an active participant in at least the robbery and kidnapping. We quote portions of the joint statement, making this explanatory remark. Defendant was using the name Hayes when arrested. In taking the joint statement the court reporter placed the names Hayes or Walters next to the answer to indicate which individual had made the reply.

"Q. Now, once you were in there and somebody had this particular gun you knew you were going to try to take this man's money, isn't that correct? A. (Hayes) Yes, sir.

"Q. And you knew you were going to take him in the car somewhere, is that correct? A. No, sir, I did not know that. (Hayes)

"Q. Well, he wound up in the car, didn't he? A. (Hayes) Yes.

"Q. And you certainly didn't object to that, did you? A. (Hayes) No. * * *

"Q. You were involved in the robbery, weren't you? A. Yes. * * *

"Q. And you certainly didn't object to this and went along with it, according to your story, is that right? A. (Hayes) I went along with it with the intention we was just going to take him and leave him some place.

"Q. But you went along with it to get some money from this man, did you not? A. (Hayes) Yes, sir."

 We will not detail all the evidence presented, but only comment that it was certainly sufficient to support the verdict.

At the close of the trial, the jury was instructed on the law, and the instructions given were in accordance with the evidence presented.

We have carefully examined the instructions given and those instructions which defendant claims the district court erred in refusing. The instructions given were correct, and the instructions refused were properly refused.

We will not discuss or quote all the instructions given, but we will outline those instructions which set forth the heart of this case.

 The jury was instructed on what constitutes murder in the first degree. They were instructed on what constitutes robbery. They were then given the following instructions:

"You are instructed that all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, or whether they directly commit the act constituting the offense, or aid and abet in its commission, or in being present have advised and encouraged its commission, are principals in any crime so committed." and

"You are instructed that all participants in robbery or attempted robbery wherein homicide is committed are guilty of murder in the first degree irrespective of which one of the participants fired the fatal shot, and it is not necessary to prove malice in such a crime." and

"If a defendant enters into a conspiracy or common design with another person to commit the crime of robbery or attempted robbery is committed or attempted and if in carrying out such crime the victim of the robbery is killed, such killing is murder in the first degree and defendant is guilty thereof

even though not present and not actually assenting to the killing of said victim."

The evidence presented at the trial clearly indicates that defendant was guilty of the crimes charged, and the instructions given properly state the law.

Defendant's eleventh issue is: "Whether or not the accused is entitled to a new trial." Defendant made a motion for a new trial at the close of his trial and again six months later. Both motions were properly denied, but we feel that some comment should be made concerning the second motion for a new trial.

David Walters wrote a letter from prison to defendant's counsel in which he stated that he would like to talk "about a few things concerning Corliss' non-involvement in the murder of Don Hammer." Walters was returned to Helena to testify at the hearing on the motion. Walters did admit to lying at the trial, but all that can be concluded from the hearing is that Walters is a liar. He consistently refused to admit who had shot Donald Hammer. We quote portions of his testimony:

"Q. You were walking up the mountain with Donald Hammer? A. Yes.

"Q. I see. Who else was with you? A. No one. * * *

"Q. So when,—now, as I get your story, when you left Hammer on the mountain, he was alive? A. Yes sir.

"Q. Okay, now, what did you do then? A. I ran back to the car.

"Q. You went back to the car? A. Yes sir. * * *

"Q. I see. Now, as I gather, according to your testimony, you robbed a man at gun-point, and left him on a mountain; you drive into Lincoln very casually, get some gas, and have a hamburger in the Lincana Cafe? A. Yes sir. * * *

"Q. But, as I gather from your testimony, you didn't shoot Don Hammer? A. No sir."

The testimony that Walters gave at the hearing only showed that he was capable of lying as he had done in the past, but it certainly did not detract from the overwhelming evi-

·dence that points to defendant's guilt. In fact, from our view-point it only points the finger more squarely at defendant once again and clearly demonstrates that we stated in the opening portion of this opinion that no one but defendant and Walters will ever know the exact details concerning the tragic events that took place on September 14, 1965.

We have carefully reviewed each specification of error and each issue presented for review and find them all to be with-out merit.

The judgment appealed from is affirmed.