STATE OF MONTANA, Plaintiff and Respondent, v. DAVID
SANDSTROM, Defendant and Appellant.

No. 14064.
Submitted May 3, 1978.
Decided June 8, 1978.
Rehearing Denied June 29, 1978.
580 P.2d 106.

Byron W. Boggs (argued), Anaconda, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, John N. Radonich, County Atty. (argued), Anaconda, for plaintiff and respondent.

MR. JUSTICE HARRISON delivered the opinion of the Court.

On November 1, 1976, Mrs. Annie Jessen, 89 years of age, was found dead in her home in Anaconda, Montana, the apparent victim of a brutal assault in which she received blows to her head from a shovel, and five stab wounds to her back from a kitchen knife. Mrs. Jessen had, in addition, been sexually assaulted and received a compound fracture to her leg, apparently after the slaying.

On November 22, 1976, defendant, 18 years of age, was arrested for an unrelated crime. Shortly thereafter, and while is custody of the Deer Lodge County sheriff, defendant confessed to the slaying of Mrs. Jessen. The confession was subsequently corroborated by certain physical evidence.

Based upon the confession and supporting evidence, defendant was charged, by an Information filed December 2, 1976, with the crime of deliberate homicide, in violation of section 94-5-102, R.C.M.1947.

At the arraignment on the charge, defendant entered a plea of "not guilty" and filed a notice of intent to rely on mental disease or defect excluding criminal responsibility, as a defense.

Defense counsel subsequently moved for a change of venue, based upon allegedly prejudicial pretrial publicity. The motion was heard on July 6, 1977 in the District Court, Deer Lodge County. Defendant presented the testimony of four witnesses. Three of the four witnesses testified that, despite their perception that many Anaconda area residents had formed some opinion concerning the

case, the defendant could receive a fair trial in Deer Lodge County. The fourth witness, Oscar Sandstrom, the father of defendant, testified primarily concerning abusive phone calls he had received following his son's arrest. The motion was denied with leave to renew at the time of jury selection.

The trial on the charge commenced on July 18, 1977. Defendant's renewed motion for change of venue was denied. Defendant further moved that the jurors be examined in voir dire individually and in segregation, which motion was also denied. Following voir dire, defendant again renewed his motion for change of venue. The motion was again denied.

In his opening statement, defense counsel informed the jury that defendant no longer intended to rely on the defense of mental disease or defect. The decision to so inform the jury appears to have been based on the reports of two psychiatrists who had examined defendant and determined he was able to appreciate the consequences of his actions, despite his low intelligence level and aggressive/impulsive personality.

The case-in-chief for the state consisted of defendant's confession, together with the corroborating physical and circumstantial evidence. Defendant called as witnesses the two psychiatrists who had examined defendant prior to trial. The witnesses testified that, while defendant may not have had the specific intent to kill at the time of the offense, it was their opinion that he had the intent to "silence" Mrs. Jessen, and was conscious of his activity in bringing about the result.

Following the reception of evidence and upon their deliberations, the jury returned a verdict convicting defendant of the crime as charged. Defendant was subsequently sentenced to 100 years imprisonment in the Montana State Prison.

Defendant appeals the judgment of conviction, entered upon the verdict of the jury.

Defendant raises two issues for review: (1) Did the District Court abuse its discretion in denying defendant's motions for change of

venue? and (2) Did the District Court err in giving court's instruction No. 5?

Defendant first argues that the District Court abused its discretion in denying his three motions for change of venue on the grounds an impartial trial could not be afforded defendant in Deer Lodge County. It is maintained the pretrial publicity, given the nature of the crime in this case, rendered selection of an impartial jury impossible.

The applicable statute in this regard, section 95-1710(a), R.C.M. 1947, states:

"The defendant * * * may move for a change of place of trial on the grounds that there exists in the county in which the charge is pending such prejudice that a fair trial cannot be had in such county."

Accordingly, it is well settled that granting a change of venue in a criminal trial is within the sound discretion of the trial court, and the denial of a motion for change of venue will only be reversed upon a showing of an abuse of discretion. *State ex rel Hanrahan v. District Court* (1965), 145 Mont. 501, 401 P.2d 770; *State v. Corliss* (1967), 150 Mont. 40, 430 P.2d 632; *State v. Olson* (1971), 156 Mont. 339, 480 P.2d 822.

It has been held that mere publication of a news story dealing with the facts and circumstances of the crime is not a sufficient basis for change of venue. Published accounts of crimes are not considered prejudicial unless so passionate as to excite undue prejudice, rendering it impossible to empanel a trial jury free from prejudice against the defendant. *State ex rel Hanrahan v. District Court*, supra; *State v. Corliss*, supra.

Defendant relies on *Silverthorne v. United States*, 400 F.2d 627 (9th Cir. 1938), and *State v. Dryman* (1954), 127 Mont. 579, 269 P.2d 796, as authority for reversing a conviction in which change of venue had been denied, despite adverse pretrial publicity. The cases, however, are clearly distinguishable on the basis of the volume and content of the publicity.

Here, the publicity under consideration consists of 17 newspaper

articles concerning various aspects of the crime, the investigation, and the subsequent arrest of defendant. Two of the articles, published after defendant's arrest, contain a picture of defendant in police custody.

■ Considering the nature of the crime involved, we find the reporting extremely objective and factual. Further, we do not consider the amount of publicity given to the crime and ensuing events in this case to be unreasonably voluminous. We conclude that there was no abuse of discretion in the District Court's refusal to grant defendant's motion for change of venue.

It is significant to note that the witnesses at the hearing on defendant's initial motion for change of venue, with the sole exception of defendant's father, testified they believed defendant would receive a fair trial in Deer Lodge County, despite the pretrial publicity and existence of some measure of adverse public opinion.

■ Further, while certain of the twelve empaneled jurors had read or heard something regarding the crime, there exists no requirement that jurors be totally ignorant of the facts involved in the case before them. It is sufficient if the juror can lay aside any impressions or opinions and render a verdict based upon the evidence presented at the trial. *State v. Moran* (1963), 142 Mont. 423, 384 P.2d 777; *State v. Simpson* (1939), 109 Mont. 198, 95 P.2d 761.

■ Defendant next contends the District Court erred in giving court's instruction No. 5 to the jury. Instruction No. 5 states:

"The law presumes that a person intends the ordinary consequences of his voluntary acts."

The given instruction paraphrases the language of section 93-1301-7(3), R.C.M.1947, giving rise to the rebuttable presumption.

Defendant, in essence, contends the given instruction shifts to a defendant the burden of disproving an element of the crime charged, i. e. intent. It is maintained the state is thus relieved from proving an essential element of the crime charged, contrary to recent pronouncements of the United States Supreme Court. *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368;

*Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508; *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281.

The recent decisions relied on by defendant generally prohibit, under the auspices of the due process clause, shifting to a defendant, such as by presumption, the burden of proof regarding an essential element of the offense, most typically the element of criminal intent. *In re Winship*, supra; *Mullaney v. Wilbur*, supra; *Patterson v. New York*, supra. However, such cases do not prohibit allocation of *some* burden of proof to a defendant under certain circumstances. Rather, the concern expressed in such cases is that the State prove every element of the offense charged as that offense is defined by state law. *State v. McKenzie*, . . . Mont. . . ., _____ P.2d _____ (No. 13011, Decided June 7, 1978).

Moreover, an instruction similar in effect to that under consideration here has received recent consideration and approval by this Court in *State v. Coleman*, . . . Mont. . . ., 579 P.2d 732, 35 St. Rep. 560. In fact, the very instruction was approved by this Court in *State v. McKenzie*, supra, by the following language:

"The presumptions that an unlawful act was done with unlawful intent, and that a person intends the ordinary consequences of his voluntary act, have been a part of Montana law since 1895. This Court has previously approved the use of these presumptions in criminal cases on the issue of intent. *State v. Caryl*, (1975), 168 Mont. 414, 426, 543 P.2d 389; *State v. McLeon*, (1957), 131 Mont. 478, 489, 311 P.2d 400, 407. See also, *State v. Jones*, (1963), 143 Mont. 155, 181, 387 P.2d 913. The conclusions drawn through the use of these presumptions are generally fair and reasonable ways to ascertain intent which, of course, can never be proved directly * * *." _____ P.2d _____, _____ St.Rep. _____.

A review of the transcript of the trial in this case demonstrates that the State satisfied its burden of proof of each of the elements of the offense charged, including the element of intent. Defendant's sole burden under instruction No. 5 was to produce some evidence that he did not intend the ordinary consequences of his voluntary

acts, not to disprove that he acted "purposely" or "knowingly". We hold the instruction does not violate due process standards as defined by the United States or Montana Constitution, and as interpreted by relevant case authority, and therefore does not constitute reversible error.

The conviction of defendant is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and SHEEHY concur.