*407 MR. JUSTICE SHEA
concurring in part and dissenting in part:
I concur in the conclusion reached by this Court that the so-called Sandstrom-type instruction given in this case was not error. As the Court reasons, the instruction is substantially different than that which was given in the Sandstrom case. On the other hand, I do not believe that it was a model instruction which should be given as a matter of course in criminal trials.
One of the reasons this Court granted defendant’s petition for rehearing was to consider the impact of the decision of the United States Supreme Court in Sandstrom v. Montana (1979),--U.S. --, 99 S.Ct. 2450, 61 L.Ed.2d 39. We have, moreover, since hearing this case on the petition for a rehearing, concluded that defendant Sandstrom is entitled to a new trial based on the opinion of the United States Supreme Court that we cannot do otherwise unless we find that beyond a reasonable doubt, the error is harmless. Using that standard, we could not determine that the error in giving the instruction was harmless. State v. Sandstrom (1978), 176 Mont. 492, 580 P.2d 106. We therefore ordered a new trial.
Although the instruction given in defendant Coleman’s case was not a Sandstrom-type instruction, I believe that the court has omitted the strongest fact as to why the instruction, even assuming it was a carbon-copy of that given in Sandstrom, was harmless error. The simple fact is that defendant Coleman testified that he was not present during the homicide; he had nothing to do with it; and, indeed, that he did not know that Nank planned to kill Miss Harstad. In essence, the defense was alibi. In Sandstrom, on the other hand, the defendant admitted the killing, but his defense was that he did not intend to kill. There is a world of difference in these two defenses and so is there a world of difference as to the potential impact of a Sandstrom-type instruction.
In the Coleman case, Nank testified in lurid detail concerning his and defendant Coleman’s plan to kidnap, rape, and kill Miss Harstad. The jury was thus given two clear choices: To believe Coleman’s alibi defense and thus conclude that Nank alone *408 planned to and killed Miss Harstad; or, on the other hand, to believe Nank’s testimony which implicated Coleman in a deliberate design to kidnap, rape, and kill Miss Harstad. Nank’s testimony, combined with the corroborating evidence implicating Coleman in the crimes involved, is sufficient beyond a reasonable doubt, to permit a jury conclusion that Coleman was guilty of the crimes for which he was convicted. Under these circumstances, once the jury chose to believe Nank (which, of course, also implies a determination that Coleman was lying), no presumption or no inference was needed to help the prosecution’s case along. For this reason, I have no trouble in concluding that even if the instruction was a carbon-copy of that instruction forbidden by the Sandstrom case, the error, beyond a reasonable doubt, was harmless.
The majority has embellished to an extent upon its original opinion concerning the other issues decided in the original case, and I emphasize that I do not agree with these statements and conclusions.
In the last paragraph of its opinion here, the Court has stated that its Opinion dated June 20, 1979, together with the Opinion issued today, shall constitute the opinion in this case. I dissented to that majority opinion and I state here that such dissent shall also constitute my views on the questions surrounding the imposition of the death penalty in this case. Nank’s bargain with the State saved his own life; but this very same bargain sealed Coleman’s date with the executioner. No court should sanction such disparate results arising from the commission of the same crimes. The tragedy of the senseless killing perpetrated by Nank and Coleman is only compounded by the senseless killing of Coleman which this Court has today sanctioned.