## STOKES v. STATE.

Opinion delivered December 13, 1902.

1. TRIAL—ABSENCE OF JUDGE.—During the trial of a murder case it was error for the presiding judge to leave the court room without suspending the trial. (Page 113.)

2. EVIDENCE—RELEVANCY.—Testimony of a witness that he heard two strangers talking, that one of them told the other to do away with deceased, and that "defendant certainly favored one of them," is irrelevant and prejudicial, in the absence of other evidence tending to identify defendant as one of the strangers. (Page 116.)

3. CIRCUMSTANTIAL EVIDENCE—LETTERS.—In a murder case depending upon circumstantial evidence where the state sought to establish that defendant killed deceased in order to enjoy a closer intimacy with deceased's wife, letters from the wife to defendant, and also to deceased, written shortly before the killing, are admissible as showing the state of her feelings toward the two men. (Page 116.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Reversed.

*D. H. Rousseau,* for appellant.

It was error to admit in evidence the letter of Sophronia Scott. 58 Ark. 390; 58 Ark. 473. The remarks of attorney Caldwell were improper. 65 Ark. 635; 68 Ark. 577. The testimony of Willis Martin and John Burton should not have been admitted. 45 Ark. 163. When a conviction is sought on circumstantial evidence, a cautionary instruction should be given. 46 Ark. 364; 109 Ill. 372; 73 Ia. 32; 136 Mass. 571; 58 Ark. 304.

*Geo. W. Murphy, Attorney General,* for the State.

WOOD, J. Appellant was convicted of the crime of murder in the first degree. The record recites that: "During the closing argument of Creed Caldwell, who assisted W. B. Sorrells, the regular prosecuting attorney in the prosecution of this case, and in the closing argument on behalf of the state, the said Creed Caldwell, while the court had retired to the room of the chancellor in the court house, and adjoining to the court room, made use of the following language, to-wit: 'Gentlemen of the jury, Mr. Foster, the attorney for the defendant, is too shrewd and too smart a lawyer to put the defendant on the stand to testify in this case.' Counsel for the defendant interrupted counsel for the state, and begged him to desist from such line of argument, but was unable to get him to refrain therefrom until the sheriff could notify the judge of counsel's conduct, and while the sheriff was on the way to the chancellor's room for the purpose of informing the court, the said Creed Caldwell, as counsel for the state, continued, and said to the jury that he did not care what anybody said; that was the law, and that, if Mr. Foster had put the defendant on the stand as a witness, it would not take this jury ten minutes to break his neck." The record continues: "As soon as the court was informed of the language and conduct of the said Creed Caldwell, which was within one minute thereafter, and the defendant could raise his objections to the remarks and language used by him to the jury and in his argument, the court proceeded to rebuke the said Caldwell and charge the jury in the following language, to-wit: 'Mr. Caldwell, I am certainly astonished that you should violate the plain letter of the law in this manner.' Here Mr. Caldwell stated that he did not know that there was a statute forbidding him to refer to the defendant's failure to testify. The court continued: 'Gentlemen of the jury, the law permits the defendant to testify if he sees proper to do so, but this is a matter to be decided by his counsel,

and the same law expressly forbids the counsel for the state to refer to the fact that the defendant does not go on the stand as a witness. It was highly improper for him to do so, and you must not let his language on that subject influence you in the slightest degree in arriving at your verdict. You must decide this case on the evidence before you, and I charge you that you must not consider the fact in any manner that the defendant did not testify as a witness. That is not even a circumstance in the case, and must not be allowed to influence your minds or prejudice the defendant's case. You can not, and must not, consider the fact that defendant's counsel saw proper not to call him to the stand. That was a matter for his counsel to decide on, and with which you have no concern. You must banish the words of Mr. Caldwell on that subject, and decide the case just as you would had they not been uttered.' "

The facts shown by the above recitals are made one of the grounds of the motion for new trial. While it appears that the judge had lost control of the proceedings for only a very short time, yet that destroyed the integrity of the trial; for, without the presence of a presiding judge at all times to uphold the majesty of the law and enforce its mandates, there can be no trial, such as is contemplated by the constitution and statutes. The constitution centers the power to preside over the proceedings constituting trials in felony cases in the person of a judge. The proceedings "will not run" without his superintending and controlling power, even for a moment. We do not mean to hold that the judge must hear every word spoken and see everything that is done in the court room, nor that he is required to remain in the same place. This at times might be not only uncomfortable and inconvenient, but impossible. We do hold, however, that his presence where he can at all times direct the proceedings is essential. He must be where, either on his own motion, or at the request of parties litigant, he can at all times during the trial protect and preserve their legal rights.

In Georgia it is held that the mere absence of the judge during the progress of the trial, where no objection is made, and where the absence is only for a few moments, and for a necessary purpose, is not necessarily reversible error. That, to become so, it must appear not only that objection was made to the failure of the judge to suspend the trial, but that his absence resulted in some harm to the losing party. But in the last case in which this rule is followed the supreme court says: "If it were an open question, we

would hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending same for any length of time, no matter how short, or for any purpose, however urgent, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to any one or not." Continuing, the court say: "The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty and property of the citizens shall be constituted during the entire trial in the manner prescribed by law." The court then adds: "The great weight of authority is in harmony with this view," and quotes from several cases, citing many more. *Horne* v. *Rogers* (Georgia), 49 L. R. A. 176; *Ellerbee* v. *State* (Miss.), 41 L. R. A. 519, note; 17 Am. & Eng. Enc. Law, p. 720, and authorities cited in note.

The wisdom of the policy, and the necessity and propriety of a strict observance of the rule, is most forcefully demonstrated in this case by the conduct of counsel for the state during the absence of the judge from the court room. Had the judge been present, we can not suppose that it would have been possible for the counsel to have said what he did in reference to the failure of the defendant to testify. For, conceding that counsel was ignorant of the statute which provides that the failure of the defendant to testify shall not create any presumption against him, still the court was familiar with this statute. And, considering the astonishment expressed by the judge after he had been informed of the remarks made by counsel during his absence, and the rebuke he administered to the counsel on account of these remarks, we can not doubt that the judge would have promptly stopped the remarks, had he been present. These remarks were exceedingly improper. The statute is positive that the failure of the defendant to testify cannot create any presumption against him. Counsel for the state made it a presumption in the most offensive and hurtful manner. Counsel for the defendant begged the counsel for the state to refrain, but the earnest importunities of appellant's counsel seemed to make the over-zealous counsel for the state only the more persistent and vehement, whereas, doubtless, one word from the judge presiding would have caused counsel to desist from a course so unfair and so prejudicial to the rights of appellant. Hence the necessity for a

presiding genius during all the stages of the trial. As this temporary absence of the judge was of itself reversible error, it is unnecessary for us to determine the effect of his impressive direction to the jury to ignore the prejudicial statements of counsel. These will not be repeated on another trial.

One Willis Martin testified that about a week before the killing he heard two strangers talking at a store across the railroad. One said to the other, "Everything all right now, except Scott." The other said, "Do away with him." The defendant certainly favored one of them, but he did not pay particular attention to them. Exception was saved to the ruling of the court in admitting this evidence. In the absence of other and better evidence of the identity of the defendant as one of the parties who made the remarks about Scott, the testimony was irrelevant and prejudicial. That the defendant "certainly favored one of the parties" making the remarks about Scott did not even tend to show that appellant was one of those parties. The witness did not give in evidence any facts upon which he based his conclusions. He did not say that he believed appellant was one of the parties, and he gave no peculiarities of form or feature by which he traced any resemblance between appellant and one of the parties.

Scott, the deceased, a negro, was assassinated while alone at his home. The appellant was charged with the crime, and the motive imputed to him, as we gather from the record, was a desire to remove Scott, so that he might enjoy a closer intimacy with his wife. To this end there was testimony introduced tending to show a relation of intimacy existing between appellant and Scott's wife. It was shown that appellant lived in the same house, and perhaps in the same room, with Scott and his wife for a time, that Scott's wife nursed appellant during a spell of sickness, that she was seen carrying him his dinner when he worked at a mill near by. For the same purpose of showing an undue intimacy between appellant and Scott's wife, and therefore a motive on the part of appellant for removing Scott, the letters written by Scott's wife to appellant and to Scott himself a short time before the killing were introduced. These letters were found in appellant's house, and therefore in his possession. The one to appellant addressed him in terms of endearment, and was couched in language, and signed in a manner indicating an affectionate intimacy existing between them, while the letter to her husband, was merely formal, addressing him as "Mr. Scott," and containing no affectionate allusions.

Mr. Willis says: "It is indispensable, in the investigation of imputed guilt, to look at all the surrounding circumstances which connect the actor with other persons and things, and may have operated as motives and influenced his actions." Wills, Circumstantial Ev. p. 41. The supreme court of Alabama says: "When it is shown that a crime has been committed, and the circumstances point to the accused as the guilty party, then proof of a motive to commit the offense, though weak and inconclusive evidence, is nevertheless admissible. *Baalam* v. *State,* 17 Ala. 457; *Overstreet* v. *State,* 46 Ala. 30; *Flanagan* v. *State, Id.* 706. See also *People* v. *Smith,* 106 Cal. 73; *Morris* v. *State,* 30 Tex. App. 95; *State* v. *Reno,* 67 Ia. 587; *State* v. *Green,* 92 N. C. 779; *Lindsay* v. *People,* 67 Barb. 548; Roscoe, Cr. Ev. 140, star page 94, and note.

While proof of motive is not essential to a conviction, yet, where it is established, it tends to strengthen the case for the prosecution, and, on the other hand, the absence of motive is regarded as a circumstance favorable to the accused. Authorities *supra.*

The letters were proper testimony to be considered for what they were worth, in connection with the other evidence, in determining whether or not there was a motive for the killing. The weight to be given was then for the jury.

For the errors indicated, we reverse the judgment, and remand the cause for new trial.