STATE, RESPONDENT, *v.* FINE, APPELLANT.

(No. 6,873.)

(Submitted September 10, 1931. Decided September 18, 1931.)

[2 Pac. (2d) 1016.]

312

Messrs. *Kendall & Baldwin* and Messrs. *Walchli & Korn,* for Appellant, submitted a brief; *Mr. H. A. Kendall* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. MacDonald,* Assistant Attorney General, for the State, submitted a brief; *Mr. MacDonald* and *Mr. Dean King,* County Attorney of Flathead County, argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by defendant from a judgment convicting him of murder and from an order denying his motion for a new trial.

The debatable point in the case is whether the court erred in allowing testimony tending to show an undue intimacy between defendant and the wife of Swarthout, the deceased, hence tending to show motive.

Defendant, a widower, lived with his mother and two sons on one corner of a city block, and Swarthout with his wife and four children lived on the other corner, the houses facing the same-street. Swarthout was away from home a large part of the time. It was the custom of Swarthout's wife to pass defendant's house (except in winter) on her way to picket horses, and it was her habit in going or coming past defendant's house to stop and talk with him; this was a daily occurrence and their conversations frequently lasted an hour or more. This had gone on for about four or five years. Occasionally Mrs. Swarthout went into defendant's house. About five years before the homicide defendant had taken Mrs. Swarthout and her children on a picnic to the lake shore, and Swarthout had told defendant, with strong exhibition of anger, never to take his wife riding again. Notwithstanding that, defendant frequently took her riding. One witness testified that he had seen defendant and Mrs. Swarthout riding together practically every day for five years, "going out of town or coming into town." Another witness testified that he had seen them riding together on the afternoon of the tragedy.

That Swarthout was highly exasperated by the friendship between his wife and defendant was known to the latter as well as to the wife. On one occasion when the two were talking together the husband came in sight and his wife "beat it," as a witness said, or, as he explained, she quit defendant and went home in a hurry. Defendant well knew the high state of feeling which Swarthout entertained toward him, because, as he testified himself, the deceased had threatened him on several occasions.

The evidence leaves no doubt that defendant and Mrs. Swarthout held for each other "an unusual degree of personal regard" (*People* v. *Selknes*, 309 Ill. 113, 140 N. E. 852, 855); their association was the subject of common rumor to such an extent that it amounted to a neighborhood scandal. The

persistence with which the affair was carried on, despite the husband's strong opposition, furnishes ground for the contention that there was an intrigue of long standing between the couple.

The court did not err in admitting the testimony. The jury ▮▮ was entitled to know the relations of the parties,—to be given information of the conditions which led up to the homicide. The defendant alleged that he shot in self-defense. It was permissible for the state to show, if it could, that he had another motive than self-protection. "Of motives it can be said that they are as various as are human characteristics." (*State* v. *Van Laningham,* 55 Mont. 17, 173 Pac. 795, 797.) It is familiar law that the emotion of jealousy may lead to a desire to kill. (Wigmore on Evidence, 2d ed., sec. 390.) Evidence of illicit relations between defendant and the spouse of deceased is competent to show motive (30 C. J. 136); but the association of the parties need not have gone that far. The motive to kill may spring as certainly from a fixed intention to possess the object of one's affections, as from the fear of loss of that already possessed. As was said by the supreme court of Kansas, approving the words of counsel: "It has been 'universally conceded, since David wrote to Joab, 'Set ye Uriah in the forefront of the hottest battle, and retire ye from him, that he may be smitten and die,' that the man who coveted his neighbor's wife had a motive for desiring the death of his neighbor.' " (*State* v. *Reed,* 53 Kan. 767, 774, 42 Am. St. Rep. 322, 37 Pac. 174, 177.)

"Whatever fact tends legitimately and fairly, according to the ordinary operation of the human mind, and the ordinary principle of human conduct, to show motive, may properly be given in evidence, in proof of any assumed motive for the commission of crime." (*Pierson* v. *People,* 79 N. Y. 424, 35 Am. Rep. 524; *Stout* v. *People,* 4 Park. Cr. R. (N. Y.) 128; *People* v. *Brown,* 130 Cal. 591, 62 Pac. 1072; and see *Stokes* v. *State,* 71 Ark. 112, 71 S. W. 248; *Thomas* v. *State,* 161 Ark. 644, 257 S. W. 376; *Patton* v. *State,* 197 Ala. 180, 72 South. 401.)

Moreover, defendant, as a reasonable man, could not have failed to realize that by his continued conduct with the wife he was certain to precipitate a conflict with the husband. It is arguable that when defendant armed himself on the evening of the tragedy he expected to meet the deceased, and intended to shoot him if the circumstances were such as to make it appear that he shot in self-defense. Only the slayer and the slain were witnesses of the act of shooting. Defendant testified that, in coming back from an errand to a garage some distance from his residence, he saw Swarthout appear from behind some brush on the opposite side of the street. Defendant then had in his left hand, he said, the bottom of an oil stove which he had filled with kerosene at the garage. It held about a gallon. This he continued to carry throughout the altercation. He had in his jumper a pistol which he had placed there shortly before. As Swarthout came across the street with the evident intention of intercepting defendant and attacking him, defendant told him to stop but Swarthout said he would not stop, calling defendant a vile name. Then, it would seem, defendant pulled the pistol, but he did not level it at Swarthout and tell him to stop; he waited until Swarthout was within two, three, or four steps, "whipped it" and pulled the trigger, shooting Swarthout through the jugular vein. Undoubtedly defendant feared Swarthout; he said he "was scared to death." Swarthout was greatly his physical superior. But Swarthout did not have a weapon. He had nothing in his hands. It is clear to us that the appearances were not even as favorable to the defendant as they were in *State* v. *Harkins*, 85 Mont. 585, 281 Pac. 551, where, upon a like plea, a judgment against the defendant was affirmed.

Whether the circumstances attending the homicide were such as to justify the fears of the defendant as a reasonable person in the belief that he was in imminent danger of losing his life, or suffering great bodily harm at the hands of Swarthout, was a question of fact for the jury. Defendant was not justified in shooting Swarthout simply because he feared him. The bare fear of an assault by Swarthout was not enough. Defend-

ant was justified in killing Swarthout only if there was reasonable ground at the time of the shooting to apprehend that Swarthout intended to do him some great bodily injury, and there then was imminent danger of such design being accomplished, and the circumstances must have been sufficient to have caused the fears of a reasonable person, and the defendant in killing must have acted under the influence of such fears alone. (Sec. 10966, Rev. Codes 1921.) The defendant was justified in acting upon appearances of danger—upon such appearances as would lead a reasonable person to believe he was in danger of great bodily harm. (*State* v. *Harkins,* supra.) All this was explained to the jury by instructions of which no complaint is made. The instructions given fully covered the case. The jury did not believe that the defendant acted in necessary self-defense. They saw and heard the defendant on the stand and took into consideration circumstances surrounding the movements of the two men immediately prior to and after the shot was fired, the details of which need not be stated here, but which may have had considerable bearing upon the jury's judgment.

The district judge, who was careful in protecting the defendant's rights throughout the trial, gave the verdict his approval by overruling the motion for a new trial.

No error appearing, the judgment and order are affirmed.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.