Howard L. BASHOR, Petitioner,

v.

Henry RISLEY, Warden of Montana State Prison; and Michael Greely, Attorney General for the State of Montana, Respondents.

No. CV–81–165–GF.

United States District Court,
D. Montana,
Great Falls Division.

May 6, 1982.

Howard L. Bashor, pro se.

Nick Rotering, Sp. Asst. Atty. Gen., Helena, Mont., for respondents.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

Petitioner, Howard L. Bashor, was convicted of the offense of deliberate homicide on June 18, 1978, following a jury trial in state district court in Toole County, Montana. Petitioner was subsequently sentenced to the Montana State Prison for a term of thirty years, with ten years suspended. On appeal, the Montana Supreme Court affirmed the petitioner's conviction. *State v. Bashor*, Mont., 614 P.2d 470 (1980).

Petitioner filed a petition for post-conviction relief in the Montana Supreme Court. By an order dated October 19, 1981, that court denied the petition. Having exhausted his state remedies, the petitioner has now filed a petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. The State has responded by filing a motion for summary judgment. The court has examined the state court record in this case. After careful consideration, and for the reasons stated below, the court denies the petitioner's application for a writ of habeas corpus, and grants the State's motion for summary judgment, there being no material issues of fact.

Petitioner has set forth nine grounds for habeas corpus relief. Before discussing the merits of each contention, the court is mindful that 28 U.S.C. § 2254(d) mandates that state factual determinations rendered after a hearing on the merits are presumed correct unless the federal reviewing court concludes that the "record in the State court proceeding, considered as a whole, does not fairly support such factual determination", and, if so, the "burden rests upon the applicant to establish by convincing evidence that the factual determination by the State was erroneous." The "presumption of correctness" is a Congressional directive which has its roots in the concept of federalism. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). *See also Fritchie v. McCarthy*, 664 F.2d 208 (9th Cir. 1981). Operating under that presumption, the court concludes that the state court record in this case contains sufficient facts upon which the trial court and the Montana Supreme Court could resolve the issues under consideration. Therefore, any factual determinations made during the state court proceedings relevant to the present issues will be afforded the respect and deference required by 28 U.S.C. § 2254(d) and *Sumner v. Mata, supra.*

## I. STATEMENT OF FACTS

This case arose out of the December 3, 1977 shooting of James Hurley in Kevin,

Montana. A review of the record indicates that it is undisputed that Hurley died of a gunshot wound inflicted by the petitioner. However, here, as in the trial court and before the Montana Supreme Court, both parties present differing versions of the events which led to Hurley's death.

The State's version is that on the evening of December 2, 1977, Hurley, Marian Irgens, Duane Enneberg, and Jeannette Frost visited Bert's Bar in Kevin. During the evening, Mrs. Irgens twice noticed the petitioner's car being driven down the street adjacent to the bar. At approximately 1:30 a. m. on the morning of December 3, the group decided to leave the bar. As they left, they observed the petitioner's vehicle parked a short distance away from the bar with its headlights on. They also noticed William Schaeffer, a friend of the petitioner, standing in front of the vehicle. Testimony was given at the trial that Schaeffer was hollering at the group, and that the hollering continued as they began to get into Hurley's vehicle. Finally, Hurley and Enneberg approached the petitioner's vehicle. As they approached, Schaeffer confronted Enneberg in front of the vehicle. Meanwhile, Hurley proceeded toward the driver's window; the petitioner was seated in the driver's seat. Within seconds, a shot was heard, and Hurley walked away from the vehicle saying "I've had it." He died shortly thereafter.

Petitioner's version of the events is that he and Schaeffer had noticed Hurley's vehicle parked at Bert's Bar during the early morning hours of December 3, 1977, and decided not to go inside until Hurley and his friends had left. Schaeffer was seated in the passenger's seat of the petitioner's vehicle when Hurley approached. As the petitioner rolled down his window, Schaeffer got out of the vehicle and began to walk around in front of it. At the same time, Hurley reached into the petitioner's vehicle and attempted to pull the petitioner out of the vehicle. Fearing that his eye, which had been operated on the previous summer, would be permanently damaged in a fight, the petitioner took his gun from the vehicle console and fired at Hurley.

The record further discloses that after the shooting, the petitioner and Schaeffer drove to the petitioner's house where they were later arrested. No complaint or information was filed against Schaeffer; he was later released. Petitioner was kept in custody and was charged with deliberate homicide. As noted previously, the petitioner was convicted by a jury and was sentenced to a term at the Montana State Prison. He has exhausted all available state remedies, and is now seeking relief in this court. Each of the nine grounds for habeas corpus relief raised by the petitioner will be discussed separately.

## II. DISCUSSION

### A. *Change of Venue*

Petitioner's first contention, initially presented to the trial court by way of a motion for change of venue, is that the pretrial publicity and community bias in Toole County precluded him from receiving a fair and impartial trial. After a hearing on the motion, the trial court reserved ruling on the issue pending the outcome of the voir dire examination, at the conclusion of which the motion was denied.

On appeal, the Montana Supreme Court ruled that the trial court did not abuse its discretion by denying the motion for change of venue, since the record reflected a lack of county-wide prejudice in Toole County which would have prevented the petitioner from receiving a fair trial. *State v. Bashor, supra*, 614 P.2d at 477.

The news coverage of which the petitioner complains consists of a newspaper article appearing in the December 9, 1977 edition of the *Shelby Times*, and a statement made on a local radio station shortly after the shooting. The newspaper article had the headline: "Bashor Charged with Deliberate Homicide in Shooting" and read in pertinent part:

Shades of the old west were re-enacted at Bert's Bar in Kevin early Saturday morning, when a bar patron was shot down and killed, at about 1:15.

According to reports, James F. Hurley, 41, was inside the bar when Howard "Ozzie" Bashor, 56, drove up and sent word inside for Hurley to come outside. Hurley walked outside and was shot down.

The radio broadcast stated that Hurley "was apparently shot as he was leaving a Kevin tavern."

 Under Montana law, a motion for a change of venue is addressed to the sound discretion of the trial court, and its ruling will be disturbed only upon a showing of an abuse of discretion. *State v. Kirkaldie*, Mont., 587 P.2d 1298, 1303 (1978), and cases cited therein. When a motion for a change of venue, premised on pretrial publicity, is denied, an abuse of discretion exists when it is apparent that the defendant was denied a fair trial as a result of the publicity. *State v. Board*, 135 Mont. 139, 143–44, 337 P.2d 924, 927 (1959). In assessing whether pretrial publicity precluded a fair trial, a court must consider the publicity complained of, and its effect, if any, on the jury. *See Altizer v. Paderick*, 399 F.Supp. 918, 922 (E.D.Va.1975). *See also State v. Sandstrom*, 176 Mont. 492, 580 P.2d 106, 108 (1978), *rev'd on other grounds, Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

 In the present case, the court finds no reason to conclude that the petitioner was the object of inflammatory or impassioned press coverage. The news items appear to be factual reports of the homicide. The only portion of the newspaper article which is contrary to the undisputed facts is the statement that the petitioner "sent word inside for Hurley to come outside." However, this single misstatement of facts is not sufficient to justify a change of venue. Montana law provides that newspaper articles may not be the basis for a change of venue unless they are "so passionate as to excite undue prejudice, rendering it impossible to empanel a trial jury free from prejudice against the defendant." *State v. Sandstrom, supra*, 580 P.2d at 108, and cases cited therein. *See also State v. Bess*, 60 Mont. 558, 569, 199 P. 426, 429 (1921). The newspaper article and

radio broadcast of which the petitioner complains are not editorialized accounts, full of inflammatory statements, but appear to be attempts at reporting the facts of the crime. *See State v. Bischert*, 131 Mont. 152, 156, 308 P.2d 969, 971 (1957). Moreover, the news items were reported approximately six months prior to the petitioner's trial. Taken as a whole, the news items indicate that the petitioner was not the target of biased or unfair press coverage. They are neither inflammatory nor impassioned, and are insufficient to sustain the validity of the petitioner's allegation.

 Furthermore, the record discloses that the impact of the pretrial publicity on the jury was minimal and that the trial court employed adequate procedures during the voir dire examination to safeguard the petitioner's right to a fair trial. All potential jurors were interviewed individually regarding their opinion or bias, if any, and the effect which the pretrial publicity may have had on the formation of that opinion or bias. Each person who eventually sat on the jury stated either that they had not read the newspaper article in the *Shelby Times*, or that they could not recall the details of the crime other than the fact that a shooting had occurred. Moreover, all the jurors stated under oath that they would be fair and impartial, and would render a verdict based solely on the evidence presented at trial. The record of the voir dire examination convinces the court that the petitioner's rights in this regard were adequately protected. The pretrial publicity had little bearing on the selection of a fair-minded jury. Thus, the impact of the pretrial publicity on the jury is also insufficient to sustain the validity of the petitioner's allegation.

Finally, the petitioner contends that the community bias in Toole County prevented him from receiving a fair trial. This contention is without merit. The leading Montana cases upon which to gauge the level of community bias in determining whether a change of venue is justified are *State v. Spotted Hawk*, 22 Mont. 33, 55 P. 1026 (1899), and *State v. Dryman*, 127 Mont. 579,

269 P.2d 796 (1954). The latter case is more analogous to the pending situation.[1] In *Dryman*, the defendant was charged with homicide. He pleaded guilty to the charge, but was later allowed to plead not guilty. Prior to trial, the defendant moved for a change of venue based upon an article that had appeared in a county newspaper. The article contained a picture of the defendant captioned "Killer". The article characterized the defendant as a "cold blooded killer" who was "so steeped in criminal tendencies that nothing could appeal to his warped and stoney mind." The article further stated that justice had been rendered for what was the "most dastardly deed" in the history of Toole County: "Justice is Done. In one brief week a killer has been tracked down and captured, a confession and completed evidence obtained and a sentence of death pronounced." The trial court denied the motion for a change of venue, and the defendant was convicted. On appeal, the Montana Supreme Court reversed. A reading of the record prompted the court to conclude that a change of venue was justified because of the "widespread and deep-seated opinion that the defendant should be hanged." *State v. Dryman, supra*, 127 Mont. at 590, 269 P.2d at 801.

█ Whatever community bias that may have existed in Toole County prior to the petitioner's trial did not reach the level of that presented in *State v. Dryman, supra*. The news items and the record of the voir dire examination have convinced this court that the anger of the members of the community was not aroused to the degree where the petitioner could not receive a fair trial. Therefore, the level of community bias in this case is insufficient to sustain the validity of the petitioner's allegation.

In sum, a review of the state court record compels this court to conclude that neither the pretrial publicity nor the community bias precluded the petitioner from receiving a fair trial. The publicity was not inflammatory, it did not have a harmful impact on the jury, and the community bias was minimal. The court is satisfied that the trial court did not abuse its discretion by denying the motion for a change of venue. Federal courts may interfere in state judicial proceedings only to correct errors of constitutional magnitude. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). No such error was committed here. Accordingly, the petitioner's first ground for habeas corpus relief is denied.

### B. *Jury Selection*

Petitioner's second contention is directed toward the jury panel as a whole and toward juror Eileen Pettigrew specifically. The petitioner contends that the trial court erred by denying his challenge for cause of both the jury panel and juror Pettigrew, and forced him to accept an unfair and biased jury. The Montana Supreme Court ruled that the trial court did not abuse its discretion by denying either the challenge to the jury panel as a whole or to juror Pettigrew. *State v. Bashor, supra*, 614 P.2d at 477–78.

█ A jury is fair and impartial if its members are able to lay aside fixed opinions of the guilt or innocence of the accused and render a verdict based solely on the evidence presented at the trial. *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643,

1. *State v. Spotted Hawk* involved the murder of a local sheepherder in Southeastern Montana. The defendant was a resident of a nearby Indian reservation. He moved for a change of venue based upon the high degree of community prejudice. The trial court denied the motion. The Montana Supreme Court reversed and made the following relevant statement:

> The court room is a public place, and a trial, in which a community is deeply interested, brings the people there; and the pressure of their presence and feeling is a strong argu-

ment, and almost irresistible, one way or the other. The influence of their presence, and the expression of their interest in the event of the trial, in divers ways, might give a false coloring to the testimony, or warp and bias the judgment in weighing and considering it. *State v. Spotted Hawk, supra*, 22 Mont. at 56, 55 P. at 1032. In petitioner's case on appeal, the Montana Supreme Court determined that the bias in Toole County did not reach the level of that presented in *State v. Spotted Hawk. State v. Bashor, supra*, 614 P.2d at 476.

6 L.Ed.2d 751 (1961). A reading of the voir dire examination conducted in the petitioner's state court trial indicates that the trial court allowed both the State and the petitioner to freely question the prospective jurors, and permitted individual examination of each prospective juror in chambers. As noted previously, the prospective jurors were questioned about the pretrial publicity, and whether they had formed a fixed opinion or harbored any bias which would prevent them from being fair and impartial. All the jurors who eventually sat on the case stated under oath that they would be fair and impartial, and would render a verdict based on the evidence presented at the trial.

In resolving the issue of juror bias and prejudice raised by the petitioner, the court is persuaded by the reasoning adopted by the Montana Supreme Court in *Great Falls Tribune v. District Court*, Mont., 608 P.2d 116, 120 (1980), regarding the degree of bias which would require the disqualification of a juror:

> In the modern world it is impossible to create an artificial, antiseptic environment from which prospective jurors may be drawn who have heard nothing of a serious crime committed in their midst. People read newspapers. They listen to radio and television newscasts. *It is only where they form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court that they become disqualified as jurors.* (emphasis added)

The same reasoning applies to the prospective jurors in the petitioner's case. They did not come to the voir dire examination wrapped in a shroud of total ignorance. A serious crime had been committed in their midst which was the subject of news coverage in the area. They were questioned about their knowledge of the crime and their degree of bias, if any. Those who expressed any bias toward the petitioner were questioned by the trial judge prior to ruling on a challenge for cause. Typically, the trial judge is in the best position to consider and weigh the prejudice of the jurors. The record of the voir dire examination clearly shows that the trial judge took every precaution to insure that the petitioner would be tried by twelve fair-minded individuals. Moreover, all the jurors acknowledged under oath that they would be impartial. This court is satisfied that the trial judge did not abuse his discretion by denying the petitioner's challenge to the jury panel, and hence did not violate the petitioner's right to a fair trial.

Petitioner also contends that the trial court erred in denying his challenge for cause of juror Pettigrew. Mrs. Pettigrew was the dancing instructor of the daughter of the victim. During the voir dire examination, Mrs. Pettigrew testified as follows to questions by defense counsel:

Q. Do you think you could be a fair and impartial juror in this case?

A. Well, no, I really don't think I can.

Q. You can't give your positive assurance that you could give Mr. Bashor a fair trial?

A. There's a question about it, so I guess my answer is no.

Q. You can't give us your positive assurance?

A. No.

The trial judge then conducted the following examination:

Q. You said previously to Mr. Connor that you didn't think you could be a fair and impartial juror. Explain what you mean or what your thoughts are on that, and just why you think this.

A. Okay. Mr. Kalbfleisch, when he asked me, was asking if I could do this on the facts, you know, of the case, and I really think I can. The other lawyer was questioning on my emotions, and those are two different things.

Q. Undoubtedly, you will be instructed that if you were to serve as a juror in this case the case must be decided upon the evidence presented in the courtroom—

A. Yes.

Q. —and that you are not to decide this case on sympathy, conjecture, or any other thing. Now would you be able to follow an instruction of that nature?

A. Yes, I really think I could because even though I would feel sympathy or emotion my conscience would not let me. I would still have to be fair when it came to choosing.

Q. You think you could be a fair juror?

A. Yes, I think I could

Q. I gather what you are saying is that you are a compassionate person, but a fair person, also?

A. Yes.

■ The United States Supreme Court has ruled that a trial court has a serious duty when determining questions of juror bias and has broad discretion in its rulings on challenges for such bias. *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). In exercising its discretion, the trial court must act to protect the rights of the accused. *Id.* Montana law provides that a determination by a trial judge as to the impartiality of a juror is final absent an abuse of discretion. *State v. Borchert*, 156 Mont. 315, 320, 479 P.2d 454, 457; *State v. Juhrey*, 61 Mont. 413, 421, 202 P. 762, 763–64 (1921). Thus, this court must examine the record to determine whether the trial judge abused his discretion by denying the challenge for cause of juror Pettigrew, thereby depriving the petitioner of his constitutional right to a fair trial.

Certainly, Mrs. Pettigrew gave answers to the defense counsel which, standing alone, would indicate that she could not be a fair juror. However, when questioned by the judge, Mrs. Pettigrew made it clear that she could set aside her emotions and sympathies and judge the petitioner on the evidence presented at the trial. *Irvin v. Dowd, supra*, 366 U.S. at 723, 81 S.Ct. at 1643. As the Supreme Court stated in *Smith v. Phillips*, —— U.S. ——, ——, 102 S.Ct. 940, 942, 71 L.Ed.2d 78 (1982): "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." Instead, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

In the present case, the record of the voir dire examination discloses that the trial judge was watchful to prevent prejudiced and biased jurors from being empaneled. He specifically questioned Mrs. Pettigrew as to whether she could be a fair juror; she stated she could be. This response apparently satisfied the trial judge, who denied the challenge for cause directed toward Mrs. Pettigrew.

■ The entire dialogue between the trial judge and Mrs. Pettigrew convinces this court that the trial judge did not abuse his discretion by denying the challenge for cause. No wrong of constitutional dimension occurred which would require this court to disturb the ruling of the trial court. Accordingly, the petitioner's second ground for habeas corpus relief, directed toward the trial court's denial of his challenge for cause of the jury panel as a whole and juror Pettigrew specifically, is denied.

C. *Polygraph Examination*

Petitioner's third contention is directed toward the exclusion of certain "exculpatory" evidence from his trial. The evidence which the petitioner contends is exculpatory consists of the results of a polygraph examination taken by William Schaeffer, who was with the petitioner on the night of the shooting. The State made a motion in limine to exclude the results of the polygraph examination. The trial court granted the motion and ruled that, as a matter of law, polygraph evidence is inadmissible in Montana. On appeal, the Montana Supreme Court upheld the ruling of the trial court. *State v. Bashor, supra*, 614 P.2d at 481.

■ As a general proposition, states are afforded wide latitude in developing

their own rules of evidence. *Chambers v. Mississippi*, 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297 (1973). As such, questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in a federal habeas corpus proceeding. *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir. 1976), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183. A habeas corpus action is not considered the proper remedy to correct trial errors or irregularities absent a denial of due process. *Jackson v. California*, 336 F.2d 521, 524 (9th Cir. 1964). To establish a denial of due process in this regard, the petitioner must prove that the error so fatally infected the trial as to deprive the petitioner of the fundamental fairness mandated by due process. *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941).

The longstanding rule in Montana has been that testimony consisting of the results of a polygraph examination is inadmissible at trial. *State v. Hollywood*, 138 Mont. 561, 575, 358 P.2d 437, 444–45 (1960); *accord, State v. Campbell*, Mont., 579 P.2d 1231, 1234 (1978). The rationale is that polygraph examinations are not seen as reliable or probative. This evidentiary principle was reaffirmed by the Montana Supreme Court on the petitioner's appeal. *State v. Bashor, supra*, 614 P.2d at 480–81.

The questions and answers during the polygraph examination taken by Schaeffer are as follows:

Question No. 1: Is your last name Schaeffer?

Answer: Yes.

Question No. 2: Was Ozzie [defendant] looking for Jim that night?

Answer: No.

Question No. 3: Are you now in Great Falls?

Answer: Yes.

Question No. 4: Did you see the gun at anytime?

Answer: No.

Question No. 5: Is your hair brown?

Answer: Yes.

Question No. 6: Did you know if Ozzie ever got out of his vehicle at anytime?

Answer: No.

Question No. 7: Are your eyes hazel?

Answer: Yes.

Question No. 8: Did you see Ozzie fire the gun?

Answer: No.

Question No. 9: Regarding this case are you telling me the complete truth?

Answer: Yes.

Question No. 10: Did Jim start the altercation?

Answer: Yes.

Question No. 11: Are you 37 years old?

Answer: Yes.

Question No. 12: Other than what you said did Ozzie say anything about the shooting?

Answer: No.

Question No. 13: Are you covering up for Ozzie in any way?

Answer: No.

This court has reviewed the record of the hearing on the State's motion in limine to exclude the results of the polygraph examination, as well as the record of the trial proceedings. The record satisfies the court that the exclusion of the polygraph evidence did not affect the fundamental fairness of the petitioner's trial. Petitioner was allowed to present his case and to attack the credibility of the State's witnesses. Petitioner testified at the trial, as did Schaeffer, whose testimony tended to corroborate portions of the petitioner's story surrounding the shooting. Schaeffer was allowed to testify to those items he testified to during the polygraph examination. Thus, his credibility was placed before the jury for consideration, as was the credibility of witnesses for the State.

Under the circumstances, this court finds that the petitioner's trial was not "fatally infected" by the exclusion of the polygraph examination. There is no indication in the record that the trial suffered from a lack of fundamental fairness in this regard. Accordingly, the petitioner's third ground for habeas corpus relief is denied.

#### D. Evidence of Prior Acts and Threats

Petitioner's fourth contention is that the trial court erred in admitting evidence concerning certain acts and statements made by the petitioner to Marian Irgens, his former girlfriend, and James Hurley, the shooting victim. The gist of the evidence, introduced by the State, was that the romantic relationship between the petitioner and Mrs. Irgens had deteriorated which resulted in hard feelings by the petitioner toward Mrs. Irgens and Hurley when they began to see each other socially.

At the trial, the petitioner made a motion in limine to exclude any threats directed by the petitioner to persons other than Hurley. The trial court ruled that threats made by the petitioner directly to Mrs. Irgens were inadmissible, but that statements made about her to other persons were admissible. Nevertheless, Mrs. Irgens was allowed to testify that "He [the defendant] said he was going to ruin my name in Toole County." [2] The testimony was admitted into evidence without objection and in direct contravention to the trial court's prior ruling. Petitioner contends that the evidence was both irrelevant and prejudicial.

 The Montana Supreme Court ruled to the contrary, holding that the challenged testimony was relevant and probative, and was admissible as tending to show the petitioner's intent on the night of the shooting. *State v. Bashor, supra,* 614 P.2d at 483, *quoting State v. Fine,* 90 Mont. 311, 2 P.2d 1016 (1931).[3]

As stated previously in Part II(C), *supra,* states are given wide latitude in developing their own rules of evidence, and a habeas corpus action is not considered the proper remedy to correct trial errors absent a denial of fundamental fairness. *Lisenba v. Cal-*ifornia, supra; Jackson v. California, supra.* After reviewing the record, this court finds that the petitioner was afforded fundamental fairness during his trial; this fundamental fairness was not impeded by the admission of the evidence of prior acts and threats. Petitioner was still allowed to present his case to the jury, including his theory of self-defense. As such, this court will not disturb the ruling of the Montana Supreme Court that the evidence complained of was relevant, probative and admissible. That ruling as to state law is binding on this court. *Sturm v. California Adult Authority,* 395 F.2d 446 (9th Cir. 1967), *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 466 *reh. denied,* 396 U.S. 870, 90 S.Ct. 40, 24 L.Ed.2d 126 *reh. denied,* 397 U.S. 930, 90 S.Ct. 894, 25 L.Ed.2d 110; *Mason v. Dunbar,* 317 F.2d 358, 359 (9th Cir. 1963). Accordingly, the petitioner's fourth ground for habeas corpus relief is denied.

#### E. Evidence to Support Guilty Verdict

Petitioner's fifth contention is that the evidence presented to the jury was insufficient to support the verdict of guilty on the deliberate homicide charge. Petitioner contends that the State failed to prove the elements of deliberate homicide beyond a reasonable doubt. In particular, the petitioner challenges the sufficiency of proof as to the element of intent; he alleges that evidence is lacking to prove that he acted either purposely or knowingly when he shot James Hurley.

 The law is clear that in a criminal case, the State must prove every element of the crime charged beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368

---

2. Mrs. Irgens was also allowed to testify as follows:

 Q. The defendant said to you, "When you have a problem you eliminate it?"
 A. Right.
 Q. And you felt that you were his problem?
 A. I felt that, yes, at the time.

3. In *State v. Fine, supra,* 90 Mont. at 314, 2 P.2d at 1017, the Montana Supreme Court stated:

 The jury was entitled to know the relations of the parties,—to be given information of the conditions which led up to the homicide. The defendant alleged that he shot in self-defense. It was permissible for the state to show, if it could, that he had another motive than self-protection.

(1970). When the sufficiency of the evidence is challenged in a federal habeas corpus proceeding, the pertinent inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The record in this case, viewed in the light most favorable to the State, convinces the court that any rational trier of fact could have found the petitioner guilty of deliberate homicide beyond a reasonable doubt. During the trial, no question was raised disputing the fact that the petitioner shot Hurley, or that Hurley died as a result of the gunshot wound. The critical dispute at the trial, before the Montana Supreme Court, and in the present proceeding, concerns the sufficiency of the evidence to support a finding by the jury that the petitioner had purposely or knowingly intended to shoot Hurley.

Montana Code Annotated [hereinafter cited as MCA] § 45–5–102(a) (1979) states: "[c]riminal homicide constitutes deliberate homicide if: (a) it is committed purposely or knowingly . . . ." MCA § 45–2–101(52) (1979) defines "purposely" as follows: "[A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result." MCA § 45–2–101(27) (1979) defines "knowingly" as follows: "[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists." From the record, it is apparent that the jury could have found beyond a reasonable doubt that the petitioner possessed the requisite intent at the time he fired the gun at Hurley.

The State offered considerable evidence on the issue of the petitioner's intent. Witnesses for the State testified that prior to the homicide, the petitioner had engaged in acts of surveillance, harassment, and threatening behavior towards Hurley and Mrs. Irgens. Other witnesses testified that immediately prior to the shooting, the petitioner and his companion, Schaeffer, beckoned Hurley over to the petitioner's vehicle. Within moments, Hurley had been shot by the petitioner. Petitioner testified that he parked his vehicle outside Bert's Bar on the night of the shooting, knowing that Hurley was inside. He also testified that he knew he was carrying a loaded weapon in his vehicle that night, and felt no remorse over Hurley's death.

Based on the foregoing, the court is convinced that sufficient evidence was presented by the State to justify a guilty verdict from the jury. Accordingly, the petitioner's fifth ground for habeas corpus relief is denied.

### F. *Jury Instructions*

Petitioner's sixth contention is that the trial court failed to fairly and fully instruct the jury on the issue of self-defense. The Montana Supreme Court reviewed the instructions given at the petitioner's trial and found that the jury was properly instructed on the law of self-defense as it exists in Montana. *State v. Bashor, supra,* 614 P.2d at 483–86. Absent a constitutional error, that interpretation of Montana law is binding on this court. *Mason v. Dunbar, supra.*

Petitioner directs the court's attention to several of his proposed instructions which the trial court refused to give, as well as those instructions on self-defense offered by the State and given to the jury. The latter instructions will be discussed first.

Petitioner argues that the trial court erred in giving Instruction Nos. 24, 26 and 28, which were offered by the State. Petitioner contends that these instructions created a higher standard for justifying the use of self-defense, and abrogated the reasonableness standard of self-defense as set

forth in MCA § 45–3–102 (1979).[4] Instruction No. 24 reads:

You are instructed that before the defendant can avail himself of the right of self-defense, it must appear to him, acting as a reasonable person, that at the time of the killing the danger was apparently so urgent and pressing that in order to save his own life, or to prevent his receiving serious bodily harm, the killing was absolutely necessary.

Instruction No. 28 reads:

In order to justify the use of force likely to cause death or serious bodily harm (often called deadly force), it must appear to the Defendant that the danger was so urgent that, in order to save his own life, or to save himself from serious bodily harm, the use of such deadly force was absolutely necessary. And it must further appear that the deceased was the assailant. A bare fear of the commission of the offense, to prevent which Defendant used a deadly weapon, is not sufficient to justify it; but the circumstances must be sufficient to excite the fears of a reasonable man, and the Defendant must have acted under the influence of such fears alone. It is not necessary, however, to justify the use of a deadly weapon that the danger be actual. It is enough to be an apparent danger; such an appearance as would induce a reasonable person to believe he was in danger of serious bodily harm. Upon such appearance a party may act with safety, nor will he be held accountable though it would afterward appear that the indications upon which he acted were wholly fallacious, and that he was in no actual peril. The rule in such case is this:

What would a reasonable person—a person of ordinary caution, judgment and observation—in the position of the Defendant, seeing what he saw, knowing what he knew, suppose from this situation and these surroundings? If such reasonable person so placed would have been justified in believing himself in imminent danger, then the Defendant would be justified in believing himself in such peril and acting upon such appearances.

Instruction No. 26 reads:

You are instructed that if you believe from the evidence that the Defendant killed the deceased in necessary self-defense as explained and defined in these instructions, you must acquit the Defendant.

The court also gave Instruction No. 22, offered by the petitioner. Instruction No. 22 reads:

You are instructed that a person is justified in the use of force or threat to use force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or commission of a forcible felony.

■ Jury instructions given in a state court trial involve questions of state law; it is only where the instructions rendered the trial fundamentally unfair that a federal question cognizable in a habeas corpus proceeding is presented. *Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976); *Shepherd v. Nelson*, 432 F.2d 1045, 1046 (9th Cir. 1970); *Jacks v. Duckworth*, 486 F.Supp. 1366, 1372 (N.D.Ind.1980). In *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), the United States Supreme Court made the following relevant statement regarding the review of jury in-

---

4. MCA § 45-3 102 (1979) states:

A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another or to prevent the commission of a forcible felony.

structions by a federal court in a habeas corpus proceeding:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S., at 147, 94 S.Ct. at 400, not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.*, at 146, 94 S.Ct. at 400.

■ Viewing the instructions as a whole, *Cupp v. Naughten, supra*, this court is satisfied that the giving of Instruction Nos. 24, 26 and 28 did not render the petitioner's trial fundamentally unfair. Conceivably, the phrase "absolutely necessary" in Instruction Nos. 24 and 28 could be read as a misstatement of the law of self-defense in Montana. However, these two instructions, read in their entirety, clearly informed the jury that the danger need not be actual, but only apparent, *i.e.*, the danger need only be of such a degree as to induce a reasonable man to believe that there was a threat to his life or a threat of serious bodily harm. Similarly, the phrase "necessary self-defense" in Instruction No. 26 could also be read as a misstatement of the law. However, the instruction contains the modifier "as explained and defined in these instructions". Instruction Nos. 24 and 28 proceed to explain and define self-defense, as did Instruction No. 22, offered by the petitioner. The latter instruction repeated almost verbatim the statutory definition of self-defense set forth at MCA § 45–3–102

(1979).[5] Taken together, and read as a whole, the court finds that the trial court did not commit any error of constitutional magnitude by giving Instruction Nos. 24, 26 and 28.[6]

■ Next, the petitioner contends that it was error for the trial court to have given Instruction No. 27 to the jury. That instruction, offered by the State, reads:

> You are instructed that an aggressor is one who provokes an attack upon himself, brings on or encourages a difficulty or quarrel. An aggressor cannot assert that he acted in self-defense.

Petitioner objects to this instruction here, as he did before the Montana Supreme Court, on the grounds that the record is void of any evidence indicating that the petitioner acted as the aggressor. On appeal, the Montana Supreme Court disagreed with the petitioner and ruled that sufficient evidence was presented by the State to justify the "aggressor" instruction. *State v. Bashor, supra*, 614 P.2d at 486. The court concluded that such evidence was presented in the form of the petitioner's prior acts and threats towards Mrs. Irgens and James Hurley, as well as the testimony that the petitioner left the headlights on as he sat in his vehicle near Bert's Bar, thereby attracting Hurley's attention, and the testimony that the petitioner and Schaeffer hollered at Hurley and beckoned him over to the petitioner's vehicle. The record clearly supports the findings and conclusions of the Montana Supreme Court on this issue. The absence of any constitutional error compels this court to uphold those findings and conclusions.

■ The court now directs its attention to the petitioner's contention that he was deprived of a fair trial because the trial

---

5. *See* note 4, *supra*.

6. Petitioner relies heavily on *United States ex rel. Collins v. Blodgett*, 513 F.Supp. 1056 (D.Mont.1981), to support his contention that the instructions on self-defense given to the jury at his trial were inherently prejudicial. However, that case is distinguishable from the case at bar. In *Collins*, this court predicated error on the failure of the trial court to give an

instruction explaining to the jury that a finding of self-defense would mandate an acquittal, *United States ex rel. Collins v. Blodgett, supra*, 513 F.Supp. at 1060.

In the present case, Court's Instruction No. 26 clearly informed the jury that they must acquit the defendant if they found that he acted in self-defense.

court refused to give several of his proposed instructions on self-defense. Those proposed instructions were (1) Nos. 15 and 15A, which defined "serious bodily injury" and "serious bodily harm" *per* self-defense; (2) No. 17, which defined "forcible felony" as used in the self-defense instructions given by the court; and (3) Nos. 16 and 18, which were related to the defense of an occupied structure, *i.e.*, the petitioner's vehicle.

The Montana Supreme Court concluded that these instructions were correctly refused by the trial court either because they did not comport with the law of Montana on self-defense, or because they were not supported by the evidence presented at the trial. *State v. Bashor, supra,* 614 P.2d at 484–85. Additionally, the court ruled that the exclusion of the instructions did not preclude the petitioner from fully presenting his theory of self-defense to the jury, including the assertion that the petitioner was protecting his injured eye from serious harm while being attacked by Hurley. *Id.*

This court will not disturb the ruling handed down by the Montana Supreme Court on this particular issue. A review of the instructions reveals that the jury was fully and fairly apprised of the law of self-defense in Montana. Nothing in the record indicates that the petitioner was prejudiced by the exclusion of his proposed Instruction Nos. 15, 15A, 16, 17 and 18. Petitioner has not convinced this court otherwise.

In sum, neither the admission of the State's proposed self-defense instructions, nor the omission of the petitioner's proposed self-defense instructions, so "infected the entire trial" or so prejudiced the petitioner as to render the trial void of due process. *Cupp v. Naughten, supra,* 414 U.S. at 141, 94 S.Ct. at 397. Therefore, the petitioner's sixth ground for habeas corpus relief is denied.

### G. *Lesser Included Offenses*

Petitioner's seventh contention concerns the failure by the trial court to instruct the jury on the lesser included offenses of mitigated deliberate homicide, MCA § 45–5–103 (1979), and negligent homicide, MCA § 45–5–104 (1979). Montana law provides that negligent homicide is a lesser included offense of deliberate homicide. *State v. Hamilton,* Mont., 605 P.2d 1121, 1129 (1980). The Montana Supreme Court extended the same status to mitigated deliberate homicide in the petitioner's case on appeal. *State v. Bashor, supra,* 614 P.2d at 487.[7]

The record discloses that the State offered an instruction on mitigated deliberate homicide. Petitioner's counsel objected to the instruction "for the reason that the evidence shows the defendant was either guilty of deliberate homicide or not guilty." The State then withdrew the instruction. The Montana Supreme Court ruled that no error had been committed because the petitioner not only failed to offer an instruction on the lesser included offenses, but also objected to such an instruction when it was offered. *State v. Bashor, supra,* 614 P.2d at 487, *citing State v. Harvey,* Mont., 603 P.2d 661 (1979).[8]

■ This contention is subject to summary disposition. The failure of a trial court to instruct the jury on a lesser included offense does not present a federal question cognizable in a federal habeas corpus proceeding. *James v. Reese,* 546 F.2d 325, 327 (9th Cir. 1976). *See also Grech v. Wainwright,* 492 F.2d 747, 748 (5th Cir. 1974). Therefore, the petitioner's seventh ground for habeas corpus relief is denied.

### H. *Closing Remarks by the Prosecutor*

Petitioner's eighth ground for relief concerns allegedly prejudicial remarks made by the State prosecutor in his closing argument to the jury. Petitioner attacks that

---

7. The Montana Supreme Court reasoned that mitigated deliberate homicide and deliberate homicide consist of the same elements but differ only in the presence of "extreme mental or emotional stress" in the lesser crime. *State v. Bashor, supra,* 614 P.2d at 487.

8. In *State v. Harvey,* the Montana Supreme Court held that error may not be predicated upon the failure to give an instruction when the instruction was not offered.

portion of the prosecutor's summation which conflicted with the responses given by William Schaeffer during the polygraph examination. The gist of the petitioner's allegation is that the State should not have been allowed to take advantage of the ruling which excluded the polygraph results by presenting a version of the facts contrary to those results.

The statement complained of is as follows:

Bill Schaeffer thought they were just going to beat him [Hurley] up a little. And you can tell by the way he sat on the stand and testified that it wouldn't take him long to completely annihilate more than two or three people. So he knew they were going over there for a fight. That's why he came into town. But he didn't know the defendant was going to shoot Hurley. He never had any idea about that. But he was out in front of the Blazer, and he was jumping and hollering around like a wild maniac with his Kung Fu.

The Montana Supreme Court concluded that the remarks made by the prosecutor were supported by the evidence, as required by MCA § 46–16–401(6) (1979),[9] and did not exceed the bounds of comment and reasonable inference which an attorney may make on or draw from the evidence. *State v. Bashor, supra,* 614 P.2d at 482.

▮ Generally, prejudicial remarks made by a prosecutor to a jury in a state court trial are not cognizable in a federal habeas corpus proceeding. *Maggitt v. Wyrick, supra,* 533 F.2d at 387. To constitute a proper ground for habeas corpus relief, the prosecutorial remarks must be so egregious as to render the trial fundamentally unfair. *Cook v. Bordenkircher,* 602 F.2d 117, 119 (6th Cir. 1979), *cert. denied,* 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196, *citing Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In such a case, the remarks must not be evaluated in the abstract, but must be judged in light of the

evidence as a whole. *Carothers v. Rhay,* 594 F.2d 225, 230 (9th Cir. 1979).

▮ The court has examined the record of the state court proceeding and finds that the prosecutor's summation to the jury was not so egregious as to render the trial constitutionally infirm. The prosecutor's closing argument is just that, argument. It is not evidence. The remarks are supported by the evidence presented by the State to bolster its version of the events on the night of the shooting. As noted previously, the petitioner was allowed to present to the jury his evidence and his version of the circumstances surrounding Hurley's death. Additionally, Schaeffer was allowed to testify at the trial to every item raised during the polygraph examination. The State prosecutor committed no error of constitutional dimension by making the contested remarks in his closing argument. Accordingly, the petitioner's eighth ground for habeas corpus relief is denied.

## I. Ineffective Assistance of Counsel

Petitioner's final contention is that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. In this regard, the petitioner raises three basic allegations: (1) that his lawyers failed to elicit exculpatory testimony favorable to the defense at the trial; (2) that his lawyers improperly objected to the giving of an instruction on mitigated deliberate homicide and did not offer an instruction on negligent homicide; and (3) that his lawyers failed to object to inadmissible evidence given at the trial.

In *Cooper v. Fitzharris,* 586 F.2d 1325, 1330 (9th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793, the Ninth Circuit stated the minimum level of competence required of an attorney by the Constitution:

Defense counsel's error or omissions must reflect a failure to exercise the skill,

---

**9.** MCA § 46–16–401(6) (1979) states in relevant part: "Counsel, in arguing the case to the judge or jury, may argue and comment upon

the law of the case as given in the instructions of the court, as well as upon the evidence of the case."

judgment, or diligence of a reasonably competent criminal defense attorney—they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made....

■ Besides showing that trial counsel failed to meet the minimum standard, the petitioner must also show prejudice as a result of counsel's performance on his behalf. Only then may he obtain habeas corpus relief on the basis of ineffective assistance of counsel. *Hines v. Enomoto*, 658 F.2d 667, 675 (9th Cir. 1981), *citing United States v. Winston*, 613 F.2d 221, 223 (9th Cir. 1980), and *Cooper v. Fitzharris, supra*, 586 F.2d at 1331.

The court will consider each of petitioner's allegations separately.

1. *Failure to Obtain Exculpatory Evidence*

■ Petitioner argues that his lawyers failed to obtain certain exculpatory evidence favorable to his defense at the trial. Petitioner has not stated in his petition precisely what type of exculpatory evidence his lawyers failed to elicit. However, this court is obligated to apply less stringent standards to *pro se* complaints than to formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McKinney v. DeBord*, 507 F.2d 501 (9th Cir. 1974). Operating under that premise, and giving the petition a liberal construction, the court has discerned that the petitioner is referring to the results of the polygraph examination taken by William Schaeffer.

■ As stated in Part II(C), *supra*, the State made a motion in limine to exclude from evidence the results of the polygraph examination. A hearing was held on the motion, which was granted. Counsel for the petitioner were present at the hearing. The record clearly shows that the petitioner's lawyers diligently and conscientiously represented him in this regard. Their actions easily meet the "reasonably competent" standard set forth in *Cooper v. Fitzharris, supra.*

2. *Lesser Included Offenses*

Petitioner argues that he was not effectively represented by his lawyers because they objected to the giving of an instruction on mitigated deliberate homicide and failed to offer an instruction on negligent homicide.

■ The record discloses that the absence of instructions on mitigated deliberate and negligent homicide was not the result of ineffective assistance of counsel. Rather, the record reveals that the petitioner's lawyers were making a reasoned and informed choice of trial tactics when they decided to bypass the presentation of instructions on the lesser included offenses. They specifically stated during the settlement of instructions that under the chosen theory of defense, the petitioner must either be found guilty of deliberate homicide or be acquitted. While in retrospect this strategy may be considered by the petitioner to have been unwise, the record reveals that the decision was reasoned and tactical, and did not constitute ineffective assistance of counsel.

3. *Failure to Object to Evidence*

Petitioner's final attack on his legal representation concerns the failure by his lawyers to object to certain testimony offered at the trial, *i.e.*, the testimony of Mrs. Irgens regarding the prior acts and threats which the petitioner directed toward her. Petitioner's lawyers made a motion in limine requesting the trial court to exclude any such testimony. The motion was granted. Nevertheless, Mrs. Irgens testified to precisely what the trial court had ruled inadmissible. No objection was made by the petitioner's lawyers.

■ As noted in Part II(D), *supra*, the Montana Supreme Court ruled that the testimony forming the basis of this contention was relevant and probative of the petitioner's intent. *State v. Bashor, supra* 614 P.2d at 482–83, *quoting State v. Fine*, 90 Mont. 311, 2 P.2d 1016 (1931). Therefore, the failure by the petitioner's lawyers to object

to the testimony complained of cannot be viewed as ineffective assistance of counsel when no error was committed by the admission of that testimony into evidence.

In sum, the court finds that the petitioner has not presented a legitimate claim of ineffective assistance of counsel under the "reasonable competence" standard. The errors and omissions complained of are not substantiated by the record, and the petitioner has failed to show that those errors and omissions were prejudicial. The court is satisfied that the petitioner's lawyers acted professionally and competently. Accordingly, the petitioner's ninth ground for habeas corpus relief is denied.

### III. CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED AND ADJUDGED that the petition for writ of habeas corpus, filed by Howard L. Bashor, be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment, filed by the State of Montana, be, and the same hereby is, GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.